UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIGUEL R. PIMENTEL, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) Civil Action No.: _____ |
| TRANSMAGIC, INC.; ITCA INTEGRITY SERVICES B.V.; ITCA INTERNATIONAL BV; ITCA GLOBAL HOLDING B.V.; CHRIS LUIJTEN; and LICENSING TECHNOLOGIES LIMITED, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.: _____

COMPLAINT

JURY DEMAND

## CLASS ACTION COMPLAINT

Plaintiff Miguel Pimentel ("Plaintiff"), on behalf of himself and all other similarly situated individuals (each a "Class Member" of the putative "Class", as described herein), by and through his attorneys, KamberLaw, LLC, as and for his complaint and demanding a trial by jury, alleges as follows based on personal knowledge as to himself and his own acts and observations, and otherwise upon information and belief based on the investigation of counsel which Plaintiff believes further investigation and discovery will support with substantial evidence.

### I. NATURE OF THE CASE

1.     Defendants, waving the banner of software anti-piracy, secretly planted "phone home" code in Transmagic software and used it to conduct surveillance on all Transmagic users in an attempt to detect a few supposedly unauthorized users. Defendants' purpose was not to deter unlicensed use but to profit by treating suspected unlicensed users as "leads" whom they could "convert" into customers by shaking them down for steep license premiums and ongoing maintenance fees..

2.      Plaintiffs do not contest Transmagic's right, in principle, to implement technology to protect its intellectual property. In this case, however, Defendants exceeded the boundaries of permissible self-protection and violated consumers' privacy and property rights by surreptitiously and indiscriminately engaging in surveillance and information-harvesting.

3.      Defendants invaded the privacy of all users of their software for the sake of promoting their revenue-generating opportunity. Without notice and without users' consent, Transmagic commandeered the computers of its customers, spied on them, and used the ill-gotten intelligence to build a recurring revenue stream extracted from an involuntary customer base. For their own enrichment, Defendants exploited users in violation of Massachusetts' Consumer Protection Act and Privacy Act, the federal Computer Fraud and Abuse Act, and common-law prohibitions against trespass to chattels and conversion.

## II. PARTIES

4.      Plaintiff Miguel Pimentel is a resident of Suffolk County, Massachusetts.

5.      Defendant Transmagic, Inc. ("Transmagic") is a Colorado corporation with its principal place of business at 11859 Pecos, Suite 310, Westminster, Colorado 80234. Transmagic's registered agent for service of process is Todd Reade, President and Chief Executive Officer of Transmagic, 10303 Northpark Drive, Westminster, Colorado 80031.

6.      The following defendants are referred to in this complaint collectively as the "ITCA Companies."

a.      Defendant ITCA Integrity Services B.V. is a Netherlands company headquartered at Scharlooweg 29, Willemstad, Country of Curaçao (in the former Netherlands Antilles).

      b.      Defendant ITCA International B.V. is a Netherlands company with offices at Beechavenue 54-80☐1119 PW Schiphol-Rijk, The Netherlands, a regional office in Seattle, Washington, and headquarters at Scharlooweg 29, Willemstad, Country of Curaçao.

      c.      Defendant ITCA Global Holding B.V. is a Netherlands company head-quartered at Scharlooweg 29, Willemstad, Country of Curaçao.

7.      Defendant Chris Luijten ("Luijten") is a native of The Netherlands residing in the Country of Curaçao and, at all times relevant to this complaint, was an owner, shareholder, direc-tor, and/or officer of ITCA Integrity Services B.V., ITCA International B.V., and ITCA Global Holding B.V. and, as further detailed herein, authorized, directed, and managed the affairs of De-fendants ITCA Integrity Services B.V., ITCA International B.V., and ITCA Global Holding B.V.

8.      Defendants Luijten and the ITCA Companies are referred to in this complaint col-lectively as "ITCA."

9.      Plaintiff is currently unaware of any ITCA entity's designation of a registered agent for service of process in the United States.

10.      Defendant Licensing Technologies Limited☐("LTL") is a United Kingdom com-pany headquartered at 22 Wycombe End, Beaconsfield,☐Buckinghamshire☐HP9 1NB☐England.

11.      Defendants acted in concert with each other in committing the acts alleged herein during the Class Period (as defined herein).

### III. JURISDICTION AND VENUE

12.      This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act of 1995, Title 28, United States Code, section 1332(d)(2). This complaint alleges claims on behalf of a national class of consumers who are minimally diverse from Defendants. The amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. The Classes consist of more than one hundred class members.

13.   The Court also has federal question subject matter jurisdiction pursuant to Title 28, United States Code, sections 1331 as this action arises in part under a federal statute.

14.   Venue is proper in this District under Title 28, United States Code, section 1391(b) because Defendants' improper conduct alleged in this complaint occurred in this district.

## IV.  ALLEGATIONS OF FACT

### A.   Transmagic and LTL

15.   Transmagic develops and sells 3D CAD (three-dimensional computer-assisted design) software, primarily for design and engineering companies.

16.   Transmagic specializes in providing 3D CAD translation and interoperability software, designed to enable users of different vendors' 3D CAD systems to share design files with each other.

17.   Transmagic's software is sold throughout the United States, including the U.S. District of Massachusetts.

18.   Transmagic distributes its software, including free trial versions, through its website at http://www.transmagic.com.

19.   Transmagic requires users of its software to enter into an end-user license agreement ("EULA") with Transmagic.

20.   Transmagic has incorporated a "Phone-Home Function" as part of its product to trap those who download and attempt to use copies of Transmagic software without agreeing to Transmagic's EULA and to track the activities of all persons using Transmagic software.

21.   The Phone-Home Function that Transmagic incorporates into its product is called "Sheriff," which is designed, developed, marketed, and licensed by LTL.

22.   The Phone-Home Function uses the user's Internet connection to transmit users' personally identifiable information ("PII") to Transmagic and/or Transmagic's agents.

4

23.    The Phone-Home Function transmits information about the user that includes the IP (Internet protocol) address and MAC (media access control) address associated with the user's computer, as well as the user's email address, Transmagic software activity data, and the date and time. Transmagic's EULA does not notify users of the presence or operation of the Phone-Home Function.

24.    Defendants do not obtain those users' consent to cause their computers to send surveillance data about the users to Transmagic.

25.    Defendants use data transmitted by the Phone-Home Function to assess how users make use of its software and, in the case of allegedly unlicensed Transmagic users, to identify those users and make them pay license fees.

26.    The Phone-Home Function in Transmagic's software provides no benefit to users; all licensed users are tracked by Defendants, solely for Defendants' benefit, so they can catch the few supposedly unlicensed users and demand fees from those persons.

27.    Defendants do not give users notice that Transmagic software includes a Phone Home Function that sends identifying information and software usage details to Defendants.

28.    Defendants do not obtain users' consent to install the Phone Home Function on users' computers or to appropriate users' Internet connections to transmit acquire identifying information and software usage details about users.

**B.    ITCA Companies**

29.    ITCA is a consulting firm that provides "revenue recovery" services to software vendors such as Transmagic.

30.    ITCA receives Phone Home information from software vendors and then uses that information to identify and contact suspected unlicensed users' of its clients' software. ITCA's business model is reflected in the phrase, "Converting Software Pirates to Customers: Best Prac-

tices from Lead Generation to Closing," which was the title of an April 2010 webinar featuring ITCA CEO Chris Luijten and an executive from V.I. Labs, a leading vendor of phone-home software.

31.    ITCA also brands itself as the "IT Compliance Association" and sometimes refers to its clients as "members." ITCA adopts this branding device so as to appear to be a software industry association, an image that ITCA leverages in its efforts to coerce supposedly unlicensed users into paying premium fees.

**C.    Luijten**

32.    Luijten launched the ITCA Companies in September 2005 with one staff member. As of mid-2010, ITCA had numerous offices around the globe, 65 employees, and annual revenue exceeding $10 million.

33.    From ITCA's inception and for the duration of the Class Period, there has existed such a unity of interest and ownership between and among Luijten and the ITCA Companies that, effectively, there was no individuality and separateness between or among them.

34.    The ITCA Companies are, collectively, the alter ego of Luijten and were so inadequately capitalized during the Class Period that, compared with the business to be done by the ITCA Companies and the risks of loss, their capitalization was illusory.

35.    Adherence to the fiction of the separate existence of the ITCA Companies as distinct from Luijten would permit an abuse of the corporate privilege and would promote injustice and sanction fraud in that such recognition of the corporate form would essentially allow the conversion of Plaintiff's property without recourse of the Plaintiff against those individuals and entities who promoted such conversion, as well as to permit Defendants to effectuate a fraud, through its agent, ITCA, against Plaintiff and the Class.

## D.    Plaintiff's Experience

36.    Plaintiff, following an Internet search for the Transmagic software, downloaded a copy of the software from a website. Aware that Transmagic offered a seven-day free trial of its software, he installed the software on his computer and attempted to translate an architectural model into a format that would make it usable in his CAD software. Transmagic did not perform to his satisfaction, and he uninstalled the software the same day.

37.    Defendants used information transmitted by the LTL Phone-Home Function installed on Plaintiff's computer to identify Plaintiff.

38.    Defendants then waited until approximately three months after Plaintiff's brief download and unsuccessful attempt to use the Transmagic software and, that time, Defendant ITCA telephoned Plaintiff. ITCA, through its employee, Anita Jonjic, stated it was acting on Transmagic's behalf, contacting companies it believed were illegally using Transmagic software. ITCA told Plaintiff that the copy of the software he thought was a free trial was actually an unlicensed copy.

39.    ITCA, while claiming to serve as a "mediator," used various coercive techniques to induce Plaintiff to agree to a large penalty for "illegally downloading" software. For example, ITCA told Plaintiff that if he did not agree to purchase the product license and service plan for $10,000 plus annually recurring maintenance fees, Transmagic and ITCA would take legal action against him for $150,000, an amount ITCA claimed it had successfully obtained in prior actions. Further, ITCA made clear it knew where Plaintiff worked and, as long as payment was made, ITCA would not disclose the "piracy" to his employer.

40.    Research conducted into such actions has not revealed the existence of any such instances of recovery by Transmagic.

7

41.     ITCA waited three months to contact Plaintiff to benefit from the likelihood that he would not recall the details of his software download and would not have retained relevant records on his computer, and would thus be more likely to accept

## V.  CLASS ALLEGATIONS

42.     Pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Classes, defined as follows:

a.     *Unlicensed Class*: All persons residing in the United States who installed unlicensed Transmagic software containing Phone Home Functions on their computers.

b.     *Licensed Class*: All persons residing in the United States who installed licensed Transmagic software containing Phone Home Functions on their computers.

43.     Excluded from the Classes are Defendants, their legal representatives, assigns, and successors, and any entities in which Defendants have controlling interests. Also excluded are the judge to whom this case is assigned and the judge's immediate family.

44.     Plaintiff reserves the right to revise this definition of the Class based on facts learned during the course of litigation on this matter.

45.     The Classes consist of hundreds, if not thousands, of individuals and other entities, making joinder impractical.

46.     The claims of Plaintiff are typical of the claims of all other Class Members. Both licensed and unlicensed Class Members were victims of having Phone-Home Functions installed on their computers without their consent.

47.    Plaintiff will fairly and adequately represent the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of Class Members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the other Class Members.

48.    Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy.

49.    The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

50.    Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

51.    The factual and legal bases of Defendants' liability to Plaintiff and other Class Members are the same, resulting in injury to Plaintiff and all of the other Class Members. Plaintiff and the other Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

52.    There are many questions of law and fact common to Plaintiff and the Class Members and those questions predominate over any questions that may affect individual Class Members. Common questions for the Classes include, but are not limited to the following, regarding Defendants' conduct described herein:

.

      a.    whether Defendants "cracked" their own software (*i.e.*, removed the software license protection) and posted it on the Internet to entrap users and extract license and maintenance fees from those users;

      b.    whether Defendants, without users' knowledge and authorization, installed Phone-Home Functions on computers in which Class Members' enjoyed rights of possession superior to those of Defendants;

      c.    for what purposes Defendants installed Phone-Home technologies onto users' computers;

      d.    how the Phone-Home Function operated when installed onto a user's computer;

      e.    whether installations of Defendants' Phone Home Function continue to reside on Class Members' computers after uninstallation of Transmagic software;

      f.    whether installations of Defendants' Phone Home Function continue to transmit Class Members' information to Defendants after uninstallation of Transmagic software; and

      g.    whether Defendants continue to retain valuable information assets from and about Class Members; and

      h.    what uses such information Defendants made and continue to make of Class Members' information assets.

      i.    whether Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, the Massachusetts Consumer Protection Act, M.G.L. ch.93A; and the Massachusetts Privacy Act, M.G.L. ch. 214, § 1B;

j.     whether Defendants misappropriated valuable information assets of Class

Members;

k.     whether Defendants have committed and/or are committing trespass to

personal property and/or chattels; and

l.     whether Defendants have committed conversion.

53.    The questions of law and fact common to Class Members predominate over any

questions affecting only individual members, and a class action is superior to all other available

methods for the fair and efficient adjudication of this controversy.

## VI.  CLAIMS FOR RELIEF

54.    Based on the foregoing allegations, Plaintiff's claims for relief include the follow-
ing:

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT,
### 18 U.S.C. § 1030, *et seq.*

55.    Plaintiff incorporates the above allegations by reference as if set forth herein at

length.

56.    Plaintiffs and the Class members' computers are computers used in and affecting

interstate commerce and communication and are therefore "protected computers" as defined in

the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(e)(2).

57.    Plaintiff and Class Members' PII that was collected by Defendants has economic

value to Plaintiff and Class Members themselves, and it is information that Plaintiff and Class

Members use as an economic asset.

58.    Plaintiff and Class Members PII has discernable value in the consumer informa-

tion marketplace.

59.    Plaintiff and Class Members have suffered loss by reason of these violations, in-

cluding, without limitation, violation of the right of privacy, interception and disclosure of PII,

and interception of transactional information that is otherwise private, confidential, and not of public record.

60.     Defendants' unauthorized collection and use of Plaintiff and Class Members' PII, without adequate notice, disclosure, and consent, imposed costs on Plaintiff and Class Members in that: Defendants appropriated to themselves assets that did not belong to them; Defendants deprived Plaintiff and Class Members of the economic value of their information assets by taking them without having engaged in an appropriate value-for-value exchange; and Defendants imposed on Plaintiff and Class Members the opportunity cost by robbing Plaintiff and Class Members of the choice to decline to transact with Defendants or the choice to transact elsewhere by engaging in a value-for-value exchange with another party that provides adequate notice and choice in its information collection and use practices.

61.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) in that they knowingly caused the transmission of a program, information, code, or command and, as a result of such conduct, intentionally caused damage without authorization, to a protected computer, which Defendants perpetrated by installing undisclosed Phone-Home Functions on Plaintiff and Class Members computers and by using the Phone-Home Functions to access, collect, and transmit the IP addresses, email addresses, and MAC addresses, system and browser information, and other personal and sensitive information associated with Plaintiff and Class Members and with their computers. Defendants intentionally caused damage without authorization to those computers by impairing the integrity of the computers and causing the computers to function as unauthorized surveillance devices. Plaintiff and Class Members have suffered aggregated losses that exceed $5,000 over a one-year period, with losses incurred in the form of PII, license and maintenance fees, and claims for payments owed for license and maintenance fees.

62.     Defendants violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing Plaintiff's and Class Members' computers, without authorization or by exceeding access, thereby obtaining information from such a protected computer.

63.     Defendants violated 18 U.S.C. § 1030(a)(4), in that they knowingly and with intent to defraud, accessed the protected computers of Plaintiffs and the Class without authorization and exceeding authorization and, by means of such conduct, furthered the intended fraud and obtained things of value, in particular, PII and unearned, premium license and maintenance fees or claims for such license and maintenance fees.

64.     As described above, Defendants caused Phone Home Functions to be incorporated and activated upon the installation of Transmagic software on the computers of Plaintiff and Class Members and Defendants caused such Phone Home Function to acquire and transmit to Defendants information from such computers.

65.     Defendants acted without authorization and exceeding authorization in that Plaintiffs and the Class members did not give Defendants permission or consent to install and operate a Phone Home Function and to collect information from the affected computers.

66.     Defendants' conduct was done knowingly and with intent to defraud in that Defendants installed and operated the Phone Home Function for the purpose of acquiring information with which Defendants contacted users and demanded license fees.

67.     Through Defendants' conduct, Defendants further their intended fraud of placing Phone Home Functions on Plaintiffs' and Class members' computers and using such software to collect and maintain Plaintiffs' and Class members' PII without the knowledge and consent, and authorization of Plaintiff and Class Members.

68. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered harms and losses that include those described herein, of taking PII and extracting or claiming exorbitant license and maintenance fees.

69. Defendants' unlawful access to Plaintiffs' and Class Members' computers and information through the use of the Phone Home Function embedded in Transmagic software constituted a single act that resulted in an aggregated loss to Plaintiffs and the Class of at least $5,000 within a one-year period.

70. Therefore, Plaintiffs and the Class are entitled to compensatory damages.

71. In addition, Defendants' unlawful access to Plaintiffs and Class Members' computers has caused Plaintiffs and Class Members' irreparable injury.

72. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' and Class members' remedy at law is not adequate to compensate them for these inflicted, imminent, threatened, and continuing injuries, entitling Plaintiffs and the Class to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L. CH. 93A

73. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

74. At all relevant times, Defendants were engaged in trade or commerce within the meaning of M.G.L. ch. 93A § 1.

75. Defendants neither maintain a place of business nor keep assets within the Commonwealth of Massachusetts.

76.    Defendants' actions described above constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of, and in violation of, M.G.L. ch. 93A §§ 2 and 9 as described herein.

77.    Defendants' actions described above occurred within the Commonwealth of Massachusetts.

78.    Defendants' actions described above have at all times relevant to this action been willing and/or knowing.

79.    Pursuant to M.G.L. ch. 93A § 9, as a direct and proximate result of Defendants' actions alleged above, Plaintiff has no adequate legal remedy, has been irreparably injured, and has suffered monetary damages in an as yet undetermined amount.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF MASSACHUSETTS PRIVACY ACT,
## M.G.L. CH. 214, § 1B.

80.    Plaintiff incorporates the above allegations by reference as if set forth herein at length.

81.    Defendants' conduct as described herein violates the Massachusetts Privacy Act, M.G.L. ch. 214, § 1B.

82.    Defendants intentionally intruded upon the solitude and seclusion of Plaintiff and Class Members and their private affairs and concerns.

83.    Plaintiffs and Class Members had a reasonable expectation of being free from such an intrusion.

84.    Defendants unreasonably, substantially and seriously interfered with Plaintiff's and Class Member's privacy by disclosing facts of highly personal or intimate nature to ITCA, a third party.

15

85.    Defendants had no legitimate countervailing reason or business interest for its conduct.

86.    Plaintiff's and Class Member's information was private and sensitive in nature as it included PII that was used by Defendants and third parties to locate and contact them.

87.    Plaintiff's and Class Members' private and sensitive information was gathered and disseminated by Defendants through the use of Phone Home technologies.

88.    As a proximate and direct result of Defendant's invasion of privacy, Plaintiff and the Class were harmed.

89.    Plaintiff and the Class are therefore entitled to damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### TRESPASS TO PERSONAL PROPERTY AND CHATTELS

90.    Plaintiff incorporates the above allegations by reference as if set forth herein at length.

91.    Plaintiff and Class Members, at all times relevant to this action, were the owners and/or possessors of computers on which Transmagic was installed and whose PII was collected by Defendants through its use of a Phone Home Function incorporated into the Transmagic software.

92.    Defendants dispossessed Plaintiff and Class Members of the use of their computers and Internet connectivity by commandeering those resources for Defendants' own purposes.

93.    Defendants impaired the condition, quality, and value of Plaintiff and Class Members' computers their installation and use of Transmagic software and its Phone Home Function, constituting an ongoing alteration to affected computers and which affected the performance of

16

such computers on an ongoing basis, circumventing users' interests in controlling the operation of their computers, determining what software functions should be installed on their computers, and what information about them and their computer use should be transmitted to others parties.

94.     Plaintiff and Class Members each had and have legally protected, economic interest in the their computers and their PII.

95.     Plaintiff and Class Members sustained harm as a result of Defendant's actions, in that the expected operation of their computers was altered and diminished on an ongoing basis.

96.     As a direct and proximate result of Defendants' trespass to chattels, interference, unauthorized access of and intermeddling with Plaintiff and Class Members' computers, Plaintiff and Class Members have been injured, as described above.

97.     Plaintiff, individually and on behalf of the Class, seek injunctive relief restraining Defendants from further such trespass to chattels, requiring Defendants to purge the subject data they have acquired, and requiring Defendants to pay damages.

## CONVERSION

98.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

99.     Defendants' installation and operation of its Anti-Piracy program, as described above, constitute an intentional and wrongful exercise of control over the computers of Plaintiff and the Class. Such computers constitute personal property.

100.    Plaintiff and Class Members had possessory interest in the computers superior to the rights of Defendants.

101.   As a direct and proximate result of Defendants' exercise of control over Plaintiff and Class Members' computers, Defendant has injured and impaired in the condition and value of Class Members' computers as follows:

a.   consuming resources of and/or diminishing the performance of the computers;

b.   devaluing, interfering with, and/or diminishing possessory interests in the computers;

c.   altering the functioning of the computers;

d.   impairing the ability to exclude others from causing the computers to transmit information about the activities of users of the computers;

e.   infringing on the right to exclude others from access to the computers;

f.   impairing the ability to exclude others from causing programs to be installed and operated without notice;

g.   infringing on right to determine which programs should be installed and operated on their computers; and

h.   compromising the integrity, security, and control of the computers.

102.   Defendants' actions were in excess of any authority any user may have granted when s/he installed the software on his/her computer.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.   Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as class representative, and appoint his counsel as class counsel;

2.      Enjoin further installation of Phone-Home technologies without informed consent of users;

3.      Enjoin further retrieval of information from installed Phone-Home technologies;

4.      Declare that the actions of Defendants, as set out above, violate or constitute the following:

      a.      The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*;

      b.      The Massachusetts Consumer Protection Act, M.G.L. ch. 93A;

      c.      The Massachusetts Privacy Act, M.G.L. ch. 214, § 1B;

      d.      Trespass to Personal Property/Chattels; and

      e.      Conversion

5.      As applicable to the Class *mutatis mutandis*, awarding injunctive and equitable relief, including, *inter alia*: (i) prohibiting Defendants from engaging in the acts alleged above; (ii) requiring Defendants to delete all data surreptitiously or otherwise collected through the acts alleged above; (iii) requiring Defendants to provide a means of notice of its Anti-Piracy program prior to installation of software; and (iv) awarding Plaintiff and Class Members full restitution of all benefits wrongfully acquired by Defendants by means of the wrongful conduct alleged herein.

6.      Award damages, including statutory damages where applicable, to Plaintiff and Class Members in an amount to be determined at trial;

7.      Restrain Defendants, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from continued access, collection, and transmission of Plaintiff and Class Members' PII via preliminary and permanent injunction;

8.      Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; and

9.    Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March ▓, 2011                          Respectfully submitted,

By: _____

Adam S. Elman
aselaw2003@yahoo.com
51 Winchester Street, Suite 205
Newton, Mass 02461
Telephone:  (617) 969-1877
Facsimile:    61) f(4- f6 )6

Scott A. Kamber
skamber@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3071
Facsimile:   (212) 920-3081

David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3071
Facsimile:   (212) 920-3081

Grace E. Parasmo
gparasmo@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3071
Facsimile:   (212) 920-3081

Joseph H. Malley
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd

Dallas, Texas 75208
Telephone:   (214) 943-6100

Attorneys for Plaintiffs